**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF VIRGINIA
NORFOLK DIVISION**

|  |  |
|---|---|
| **ADAMS OUTDOOR ADVERTISING LIMITED PARTNERSHIP,** a Michigan limited partnership,<br><br>3801 Capital City Blvd.<br>Lansing, MI 48906<br><br>Plaintiff,<br>v.<br><br>**CITY OF VIRGINIA BEACH, VA.**<br><br>2401 Courthouse Dr.<br>Virginia Beach, Va. 23456,<br><br>Defendants. | Case No. _____<br><br>Judge _____ |

---

## COMPLAINT

---

Plaintiff Adams Outdoor Advertising Limited Partnership ("Adams") hereby sues

defendant City of Virginia Beach, Virginia ("the City"), under 42 U.S.C. § 1983, seeking a

declaratory judgment in each of five counts that certain laws of the City violate the First

Amendment to the United States Constitution on their face and as applied to Adams as

summarized and averred in this Complaint as follows:

**Jurisdiction and Venue**

1.      This Court has original subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (redress deprivation under color of state law of federal constitutional right) and 28 U.S.C. §s 2201 and 2202 (declaratory judgment).

2.      Venue is proper in this district under 28 U.S.C. § 1391 as the defendant is located within this district and because the events giving rise to the plaintiff's claims occurred in this district.

**Parties**

3.      Plaintiff Adams is a limited partnership formed under the laws of Minnesota with offices in Norfolk, Virginia and elsewhere. Adams' principal office is in Michigan.

4.      Adams is in the business of outdoor advertising via signs that it owns.

5.      Defendant City is a municipality within the Commonwealth of Virginia with its municipal government offices located at 2401 Courthouse Dr., Virginia Beach, Va. 23456. It is the largest city in Virginia by population with over 450,000 residents and a major tourist destination during summer months. The City's department of economic development estimates that over 19 million tourists visited during 2017.

        (a)      About 20 miles west of Virginia Beach is Norfolk, Virginia's second largest city with a population of over 240,000 and home of the largest naval base in the world.

        (b)      About 20 miles southwest of Virginia Beach is Chesapeake, Virginia's third largest city with a population of over 230,000.

(c)     About 30 miles northwest of Virginia Beach are the cities of Hampton and Newport News, Virginia's sixth and eighth largest cities with a combined population of about 315,000.

(d)     About 40 miles southwest of Virginia Beach is Suffolk, the largest city in Virginia by boundary land area with a population of about 85,000 and growing.

(e)     The metropolitan statistical area used by the U.S. Census Bureau, including Virginia Beach and surrounding areas has a population of over 1.7 million people.

**Background about outdoor advertising by Adams**

6.     Adams engages in outdoor advertising in various regions of the United States, including the City of Virginia Beach, by displaying messages comprised of images usually accompanied by words on freestanding outdoor signs. Most of Adams' freestanding signs in the United States are located on privately-owned land. The messages range from those whose content qualifies under First Amendment jurisprudence as "commercial speech" and those whose content qualifies as "noncommercial speech" about matters of public concern.

7.     Typically, the commercial and noncommercial messages displayed on Adams' signs are not about any product, service, establishment, or activity that is available to the public on the same parcel of land where the sign sits.

8.     Adams owns 25 freestanding signs that sit on privately-owned land within the City. Adams owns some of that land, and otherwise has a lease with the owner of the land. Some of those signs are double-faced, with one display—called a sign face—oriented toward traffic coming toward the sign from one direction, and another sign face oriented toward traffic coming toward the sign from the opposite direction.

9.     Under the City's Zoning Ordinance, double-faced signs are considered a single sign, when a part of the same sign structure, parallel, and not separated by an angle greater than 15 degrees. (Sec. 210.01(c)).

(a)     A copy of section 210.01 accompanies this Complaint as **Exhibit 1**.

10.     The outdoor advertising industry classifies signs based on the dimensions of their sign faces. Most of Adams' signs in Virginia Beach have sign faces measuring about 10 feet high x 35 feet wide, an industry standard. This complaint calls those "small bulletins." The rest have larger sign faces, measuring about 14 feet high x 48 feet wide, another industry standard, known as bulletins.

11.     All of Adams' signs within the City have "static" displays—the words and images of the messages reside on seamless vinyl installed on the sign face, and do not move. To change the message, workers climb up to the sign face, remove the vinyl from the sign face's perimeter, and install a new roll of seamless vinyl containing the new message.

12.     Adams has the capacity to use sign faces with "digital" displays. Digital displays change messages in ways analogous to a Microsoft PowerPoint slide show. Typically, the digital image and words are static for 6-8 seconds—then that static digital image is replaced with a new one— generated remotely by computer software. Because computers allow adding a new message quickly, signs that display digital messages are especially useful to viewers and speakers where the timing of the message matters. Examples:  Amber Alerts, announcements of upcoming dates and times of one-time events, such as rock concerts, or openings of seasonal businesses.

13.     Adams has no signs with digital displays within the City. But the digital displays that Adams can install use light emitting diodes (LEDs) that use red, green, and blue diodes—which do not share the criticized characteristics of white LEDs used in street lighting.

14.     Adams' digital displays have ambient light sensors, dimming software that changes the brightness of the display in response to surrounding ambient light, and limits on maximum brightness based on a footcandle standard. Footcandles measure the display's variance from ambient light to ensure that the display will not be too bright for surrounding conditions, *e.g.*, a sunny day vs. a foggy day.

15.     On electronic displays, Adams uses JPEG image files, which is an easy-to-read image format used in digital photography. Adams' digital displays are 72 pixels per inch, which is common in the United States for screen-based media.

16.     The words and images that Adams displays are designed to be readily perceived and quickly understood by people moving past the sign in cars and other vehicles.

17.     Speakers with commercial messages and noncommercial messages about matters of public concern choose Adams to serve as the gateway for communicating the speakers' messages to the traveling public. They conclude that Adams' signs and advertising prowess will communicate their messages to the public effectively.

18.     Adams exercises complete editorial control in choosing which messages that it will display. In some instances, Adams works with a speaker to select and design the content of the

words and images comprising the speaker's message. In a few instances, Adams itself may be the speaker, presenting its own message.

**The City denies Adams' applications for permits to erect a static sign at 3615 Virginia Beach Blvd.**

19.     Adams has secured a lease of part of a parcel of land at 3615 Virginia Beach Blvd. in the City of Virginia Beach. The lease allows Adams to erect a sign there, but Adams has not yet erected one.

20.     The parcel at 3615 Virginia Beach Blvd. is zoned B-2, called a Community Business District. Boat dealers, commercial parking garages, wholesale and distribution operations, large grocery and retail stores, and comparable business uses are allowed in a B-2 district. Next are Images 1, 2, and 3, showing screenshots captured in 2020 from Google Maps. Each image shows Virginia Beach Blvd. in the general vicinity of Adams' lease.  **Image 1**:



**Image 2**:



**Image 3**:



21.     In October, 2019, Adams applied to the City for a permit to erect a small bulletin at 3615 Virginia Beach Blvd., with two *static* displays, one facing traffic coming toward the sign from the east and one facing traffic coming from the west. A copy of that application accompanies this Complaint as **Exhibit 2**.

22.     If erected, the sign at 3615 Virginia Beach Blvd. would comply with the Virginia Uniform Statewide Building Code and other structural requirements imposed by law.

23.     If erected, the sign at 3615 Virginia Beach Blvd. would not be located:

(a)     within 500 feet of an interchange, or intersection at grade, on any highway, interstate, or city council-designated expressway;

(b)     within 200 feet of any right-of-way of any underpass, overpass, bridge, or tunnel or related plaza;

(c)     within 50 feet of any property line;

(d)     within 660 feet of the right-of-way of any interstate or expressway designated by city council;

(e)     within 25 feet of the right-of-way of any other street;

(f)     within 200 feet of any residential or apartment zoning district;

(g)     upon any lot having a street frontage of less than 200 feet and an area of less than 10,000 square feet.

24.     On November 7, 2019, the City denied each of Adams' applications for a permit to erect a sign at 3615 Virginia Beach Blvd. The City's zoning administrator said, "Since 1988, the City of Virginia Beach has not allowed the erection of new billboards."

**The City denies Adams' applications for permits to erect a digital sign at 1195 Bells Rd.**

25.     Adams has secured a lease of part of a parcel of land at 1195 Bells Rd., Virginia Beach.

26.     The parcel at 1195 Bells Rd. is zoned I-1, which is light industrial. In a light industrial zone, the City allows manufacturing, warehousing, heavy equipment sales, and an airport. Next are Images 4, 5, and 6, showing screenshots captured in 2020 from Google Maps. Each image shows Bells Rd. in the general vicinity of Adams' lease.

**Image 4**:



**Image 5**:



**Image 6**:



27.     In October 2019, Adams applied to the City for a permit to erect a small bulletin at 1195

Bells Rd., but with *electronic* displays, one facing each direction. If erected, the sign would

comply with the Virginia Uniform Statewide Building Code and other structural requirements

imposed by law. A copy of that application accompanies this Complaint as **Exhibit 3**.

28.     If erected, the sign at 1195 Bells Rd. would not be located:

(a)     within 500 feet of an interchange, or intersection at grade, on any highway,

interstate, or city council-designated expressway;

(b)      within 200 feet of any right-of-way of any underpass, overpass, bridge or tunnel or related plaza;

(c)      within 50 feet of any property line;

(d)      within 660 feet of the right-of-way of any interstate or expressway designated by city council;

(e)      within 25 feet of the right-of-way of any other street;

(f)      within 200 feet of any residential or apartment zoning district;

(g)      upon any lot having a street frontage of less than 200 feet and an area of less than 10,000 square feet.

29.      On November 7, 2019, the City denied Adams' application for a permit to erect a sign at 1195 Bells Rd. with electronic displays. The City's zooming administrator said, "Since 1988, the City of Virginia Beach has not allowed the erection of new billboards."

**The City's sign ordinances—**
**messages about something *offsite* v. messages about something onsite**

30.     Section 210.2 of the City's Zoning Ordinance defines "sign" in part as "any structure, display, device or other object or thing" that is "visible from any public street or right-of-way, any area open to use by the general public, or any navigable body of water."

(a)     A copy of the definition of **"sign"** in **section 210.2** accompanies this Complaint as **Exhibit 4**.

31.     Section 210.2 defines "sign" also according to the content of the messages appearing on the sign. A "sign" bears any of the following messages through images, letters, or words:

(a)     "identifies or advertises, or directs or attracts attention to, any product, merchandise, service, business or establishment" or

(b)     "suggests the identity or nature of any business or establishment," or

(c)     "invites or proposes a commercial transaction," or

(d)     "communicates a message of a noncommercial nature."

32.     Under the City's ordinances, a "billboard" is a "sign" with specified characteristics. The City's ordinances do not distinguish "billboards" from other signs based on any physical characteristic. The ordinal distinction between "billboards" and other signs rests entirely on the content of a sign's message. Section 210.2 of the City's Zoning Ordinance defines "billboard" as a "sign, including the supporting sign structure, that advertises or directs the attention of the

general public to an establishment, business, product or service that is located on a separate site from the billboard."

(a)     This Complaint refers to signs whose messages qualify as "billboards" as "signs advertising something available *offsite*."

(b)     A copy of the definition of **"billboard"** in **section 210.2** accompanies this Complaint as **Exhibit 5**.

33.     Section 216(a) of the City's Zoning Ordinance commands:  "No new billboards shall be erected within the city, effective immediately."

(a)     A copy of **section 216** and **section 215** governing grandfathered billboards, to which section 216 refers, accompanies this Complaint as **Exhibit 6**.

34.     If the advertised establishment, business, product, or service is located on the same site where the sign sits, the sign is lawful. This Complaint refers to such lawful signs as "signs advertising something available onsite."

35.     Under section 210.1 of the City's Zoning Ordinance, the City's zoning administrator will issue a permit to erect a new sign that meets various objectively-verifiable structural and location criteria, but not if the sign will advertise something available *offsite*. The permit provisions say nothing about how, when evaluating whether to issue a permit, the administrator is to determine that the sign proposed will advertise something available *offsite* instead of onsite.

(a)     A copy of the **permit** provision, **section 210.1**, accompanies this Complaint as **Exhibit 7**.

36.    If the City issues a permit to erect a sign, that sign is allowed to "display any lawful noncommercial message in lieu of any other message." (Sec. 210.01(b).)

(a)    A copy of **section 210.01(b)** of the Zoning Ordinance about **noncommercial** messages accompanies this Complaint as **Exhibit 8**.

37.    If the zoning administrator assumes or speculates that the messages on a proposed sign to advertise something available *offsite*, the zoning administrator will not issue a permit. So, the proposed sign cannot go up even if it would display noncommercial messages about matters of public concern.

38.    The City's refusal to allow new "billboards" does not rest on any City findings that outdoor advertising messages advertising something available *offsite* are commonly false or misleading or coercive or commonly propose unlawful transactions—or that they are materially more false or misleading, or more coercive, or proposed materially more unlawful transactions than do messages advertising something available on the same site where the sign is.

### The City's sign ordinances— exceptions to ban of new signs advertising something available offsite

39.    The City's ordinances make exceptions to the City's ban of new signs advertising something available *offsite*. Those exceptions rely on the content of a sign's messages. Examples:  Section 210.2 of the Zoning Ordinance (Exhibit 5) excludes new roadside guide signs (section 33-114.4.1 of the Code of Virginia Beach, Exhibit 9) and public art sponsorship signs (section 33-114.4.2 of the Code of Virginia Beach, Exhibit 10) from the definition of "billboard"—even though those signs may direct the public's attention to an establishment, business, product, or service located on a separate site from the sign.

Page **16** of **34**

(a)      Copies of the roadside guide sign ordinance (section 33-114.4.1) and the public art sponsorship sign ordinance (section 33-114.4.2) accompany this Complaint as **Exhibits 9 (roadside) and 10 (public art)**.

40.      Other exceptions: signs that advertise commercial farm stands (section 33-114.4 of the Code of Virginia Beach); signs on motor vehicles that advertise a business conducted elsewhere, if the same person who owns the business also owns the vehicle (section 3.6 of the Code of Virginia Beach).

(a)      Copies of the ordinal provisions cited above accompany this Complaint as **Exhibits 11 (farm stands) and 12 (motor vehicles)**.

41.      The City's ordinances also allow signs located on public property authorized by law, or by a government officer, if the signs communicate certain kinds of noncommercial messages (section 210.2–Exhibit 5; section 3.3 of the Code of Virginia Beach). The ordinances allow the City's council to authorize "other signs" on public property by ordinance or resolution, but the ordinances specify nothing that restricts the content of those "other signs." (Section 3.3(a)(3).)

(a)      A copy of section 3.3 of the Code of Virginia Beach accompanies this Complaint as **Exhibit 13**.

**The City's sign ordinances—digital displays**

42.    In most instances, the Zoning Ordinance bars all "electronic display signs." A copy of the ordinal provision **barring electronic display signs**, **section 212(m)** of the Zoning Ordinance, accompanies this Complaint as **Exhibit 14**.

43.    The Zoning Ordinance defines electronic displays as those which change messages by using light emitting diodes (LEDs) or other means. Adams' proposed digital signs use LEDs.

(a)    A copy of the ordinal definition of **"electronic displays"** in **section 210.2** accompanies this Complaint as **Exhibit 15**.

44.    The same provision that defines electronic displays (section 210.2, Exhibit 15) allows digital signs if they "display only the temperature or time of day in alternating cycles of not less than five seconds."

45.    The provision that generally outlaws electronic displays (section 212(m), Exhibit 14) allows electronic displays if they are at service stations and show the price of gasoline and diesel fuel.

(a)    A copy of **section 217** of the Zoning Ordinance, which governs **electronic display of fuel prices** accompanies this Complaint as **Exhibit 16**.

46.    The same provision (section 212(m), Exhibit 14) also allows electronic displays in areas zoned as major entertainment venues if city council expressly allows the sign. The ordinances do not bar city council from allowing in major entertainment venues electronic displays whose messages advertise something available *offsite*.

Page **18** of **34**

(a)      A copy of **section 218**, which governs **electronic displays in major entertainment venues** accompanies this Complaint as **Exhibit 17**.

**Count 1**
**(denial of permit to erect static sign**
**at 3615 Virginia Beach Blvd. violates First Amendment—as applied challenge)**

47.     Adams incorporates here all prior paragraphs of this Complaint.

48.     Adams lawfully possesses a parcel of land in the City at 3615 Virginia Beach Blvd., which is zoned as a Community Business District. Adams applied to the City for a permit to erect a new sign with a static display on its parcel at 3615 Virginia Beach Blvd.

49.     The City denied Adams' application for a permit.

50.     Adams' application did not identify anything about the content of messages that it expects to display on the proposed sign, such as whether the messages would be commercial, noncommercial, or would direct the public's attention to an establishment, business, product, service, or other activity *offsite*.

51.     If the City had allowed Adams to erect the proposed sign, Adams would have displayed messages to the public about establishments, businesses, products, services, or other activities located or conducted *offsite*, and would have displayed noncommercial messages about matters of public concern—regardless of whether those noncommercial matters relate to anything onsite. Example: messages urging the public to vote for a particular candidate during an election.

52.     The City denied Adams' application because the City's zoning administrator deemed the proposed sign to be a "billboard" under section 210.2 of the Zoning Ordinance and because

Page **19** of **34**

section 216(a) of the Zoning Ordinance commands: "No new billboards shall be erected within the city." (See Exhibits 5 & 6 - "billboard" defined & ban on new billboards.)

53.     The free speech and free press guarantees of the First Amendment to the United States Constitution protect against government regulations that burden speakers based on the actual or anticipated subject-matter of their speech, or based upon the actual or anticipated viewpoint expressed in their speech. Those guarantees apply to those who engage in outdoor advertising via signs.

54.     The free speech and free press guarantees of the First Amendment to the United States Constitution also protect against government regulations that confer a benefit upon speakers based on the actual or anticipated subject-matter of their speech, or based upon the actual or anticipated viewpoint expressed in their speech, while withholding the same or a comparable benefit to speakers based on the actual or anticipated subject-matter of their speech, or based upon the actual or anticipated viewpoint expressed in their speech. Those guarantees also apply to those who engage in outdoor advertising via signs.

55.     The City's ordinal distinction between "billboards" and other signs rests entirely on the content of a sign's message and the viewpoint it expresses. Section 210.2 of the Zoning Ordinance defines "billboard" as a "sign, including the supporting sign structure, that advertises or directs the attention of the general public to an establishment, business, product or service that is located on a separate site from the billboard."

56.     To enforce the ordinal command of "no new billboards," the City's zoning administrator must determine in the first instance what the content of the messages to be displayed is going to be. That is:  whether the sign is going to display messages that "advertise or direct the attention of the general public to an establishment, business, product, or service that is located on a separate site" from the proposed sign. (See Exhibit 5 - billboard" defined.)

57.     The City's zoning administrator denied Adams' application for a permit by assuming or speculating that the proposed sign would display messages about something available *offsite*. By denying Adams' application for a permit because of the expected or actual content of Adams' future messages, and based upon the expected or actual viewpoint expressed in Adams' future messages (advocating patronage of something available *offsite*), the City violated Adams' right of free speech and freedom of the press under the First Amendment.

58.     The City has not determined that any message that Adams would display on the proposed sign is false or misleading, coercive to consumers, or would advocate engaging in any unlawful transaction.

59.     The City has not identified, and cannot identify, a sufficiently important governmental interest that justified the content-based and viewpoint-based grounds upon which the City denied Adams' application for a permit to erect a new sign at 3615 Virginia Beach Blvd. Also, the City has not shown, and cannot show, that its content-based and viewpoint-based grounds for denying the application are narrowly tailored to serve whatever interest underlies the zoning administrator's decision to deny the application.

60.     Adams seeks a declaratory judgment that the City's denial of Adams' application for a permit to erect a new sign at 3615 Virginia Beach Blvd. violated Adams' First Amendment rights, and that the ordinal definition of "billboard" and the ban of new billboards in section 216(a) of the Zoning Ordinance combine to violate the First Amendment *as applied to* the denial of Adams' application for that permit.

61.     Adams also seeks a declaratory judgment that the City's ordinances violate Adams' First Amendment rights *as applied to* the denial of its application for the permit for the reasons expressed in counts 3, 4, and 5 of this Complaint, which are incorporated here.

62.     Adams also seeks an award of attorneys' fees and costs as allowed by 42 U.S.C. § 1988, 28 U.S.C. § 1920, and such other relief as allowed by law and within this Court's jurisdiction to provide.

**Count 2**
**(facial invalidity of ordinances as content-based, viewpoint-based regulations)**

63.     Adams incorporates here all prior paragraphs of this Complaint.

64.     Adams has secured leases on various parcels of privately-owned land within the City, and desires in the future to erect new signs on one or more of those parcels. If erected on those parcels, the new signs would comport with current law governing the structural and physical characteristics of permitted signs. Adams desires to display on such signs messages that "advertise or direct the attention of the general public to an establishment, business, product, or service that is located on a separate site" from the proposed sign. (See Exhibit 5 - billboard" defined.)

65.     On such signs, Adams also desires to display noncommercial messages about matters of public concern—regardless of whether those matters relate to anything available onsite. An example of such noncommercial messages:  messages urging the public to vote for a particular candidate during an election.

66.     The City's Zoning Ordinance creates an unconstitutional barrier to future applications to erect such signs, rendering future applications futile—as the City denied various applications in the fall of 2019 to erect proposed new signs at locations other than those described specifically in this Complaint. The City denied those applications because the zoning administrator assumed or determined that the proposed signs would "advertise or direct the attention of the general public to an establishment, business, product, or service that is located on a separate site" from the proposed sign. (See Exhibit 5 - billboard" defined.)

67.     Rather than sue upon each denial individually, Adams is challenging the Zoning

Ordinance as facially unconstitutional to the extent that it discriminates against proposed signs

whose actual or assumed messages would qualify such signs as "billboards" under the Zoning

Ordinance, while discriminating in favor of signs advertising something available onsite.

68.     The facially-challenged sections—read together—are:  the definition of "billboard" in

section 210.2 (Exhibit 5); the ban of new billboards in section 216(a) (Exhibit 6); the definition

of "sign" in section 210.2 (Exhibit 4); the provisions governing sign permits in section 210.1

(Exhibit 7); and section 210.01(b) allowing noncommercial speech on "permitted" signs (Exhibit

8).

69.     Read together, the above-cited sections of the Zoning Ordinance allow or disallow

proposed signs *based on* the expected or actual *content* of messages that would appear on the

signs in the future. Thus:

(a)     The sections mandate *granting* a permit to erect a proposed sign satisfying

objectively verifiable physical characteristics and locales, but only if the City's zoning

administrator assumes, speculates, or determines that the content of the sign's future messages

will <u>not</u> advertise an establishment, business, product, service, or activity located or conducted

*offsite*.

(b)     Those sections mandate *denying* a permit to erect the same proposed sign if the

City's zoning administrator assumes, speculates, or determines that the content of the sign's

future messages *will* "advertise or direct the attention of the general public to an establishment,

business, product, or service that is located on a separate site" from the proposed sign. (See

Exhibit 5 - billboard" defined.)

70.     Read together, the above-cited sections of the Zoning Ordinance allow or disallow

proposed signs *based on* the expected or actual *viewpoint* expressed in messages that would

appear on the signs in the future. Thus:

        (a)     If the zoning administrator expects or determines that future messages on a

proposed sign would advocate patronage of an "establishment, business, product, or service that

is located" *offsite*, the administrator will deny the application for a permit to erect the sign.


        (b)     If the zoning administrator expects or determines that future messages on the

same proposed sign would advocate patronage of an establishment, business, product, service, or

other activity located onsite, the administrator will grant the application for a permit to erect the

sign.


71.     The City has not identified, and cannot identify, a sufficiently important governmental

interest that justifies the content-based and viewpoint-based discrimination that its laws impose

on those, such as Adams, who desire to erect new signs to advertise to the public an

"establishment, business, product, or service that is located" *offsite*. Also, the City has not

shown, and cannot show, that its content-based and viewpoint-based burdens are narrowly

tailored to serve whatever interest underlies those burdens.


72.     About 32 freestanding signs whose content qualifies as "billboards" under the Zoning

Ordinance exist lawfully in the City because they were erected before the City banned new

"billboards." When the City adopted its ordinal bar of new billboards (Exhibit 6), the City also adopted section 214 of the Zoning Ordinance, which bars all new freestanding signs greater than 12 feet above the ground. The height of the "grandfathered" billboards exceeds 12 feet above the ground, as would most freestanding signs of outdoor advertising companies. The City imposed the height limit to support its content-based and viewpoint-based ban of new "billboards" challenged in this suit.

(a)    A copy of section 214 of the Zoning Ordinance—which imposed physical limits on new freestanding signs at the same time that the Zoning Ordinance banned new billboards—accompanies this Complaint as **Exhibit 18**.

73.    Adams seeks a declaratory judgment that, when read together, the ordinances cited in this Count violate the First Amendment *on their face* and therefore are invalid as a matter of law to the extent that they bar erecting new signs as described in this count.

74.    Adams also seeks an award of attorneys' fees and costs as allowed by 42 U.S.C. § 1988 and 28 U.S.C. § 1920, and such other relief as allowed by law and within this Court's jurisdiction to provide.

**Count 3**
**(facial invalidity of ordinances as prior restraint of noncommercial speech due to anticipated commercial speech about *offsite* businesses, products)**

75.    Adams incorporates here all prior paragraphs of this Complaint.

76.    Under the City's ordinances, erecting a new sign without a permit subjects the sign owner to a potential criminal penalty under **section 1-9(b)** of the Code of Virginia Beach, a copy of which accompanies this Complaint as **Exhibit 19**.

77.    On their face, the sections of the Zoning Ordinance cited in the preceding Count bar erecting proposed signs to express noncommercial speech about matters of public concern—based upon whether the zoning administrator expects or determines that future messages on the proposed sign also would advertise "an establishment, business, product, or service" that is *offsite*. That is:

(a)    The zoning administrator must deny an application to erect a proposed sign if the administrator expects or determines that future messages on the proposed sign will "advertise or direct the attention of the general public to an establishment, business, product, or service that is located on a separate site" from the proposed sign. (See Exhibit 5 - billboard" defined.)

(b)    Denying the application automatically deprives the applicant of communicating to the public, by sign at the proposed locale, any noncommercial expression about matters of public concern.

(c)    In contrast, the zoning administrator must grant an application for a permit where the zoning administrator expects or determines that the proposed sign will advertise an

establishment, business, product, service, or other activity located or conducted onsite. Upon

erecting the permitted sign, the Zoning Ordinance—under section 210.01(b)—allows the sign's

owner to express on the sign any noncommercial messages about matters of public concern of

the applicant's choosing—regardless of whether those messages relate to anything onsite. (See

Exhibit 8—Section 210.01(b) re noncommercial messages.)

78.     As described in the preceding paragraph, the Zoning Ordinance imposes a prior restraint

upon speakers' expression by sign at a proposed locale of noncommercial messages addressing

matters of public concern—based upon the content of *other* messages that the zoning

administrator expects or determines the speaker would express on that sign.

79.     Prior restraints are laws or other government orders that block expressive activity

protected by the First Amendment before it can occur, or that require the consent of government

officials before it can occur. Prior restraints of noncommercial speech about matters of public

concern presumptively violate the First Amendment. The City has not identified, and cannot

identify, a sufficiently important governmental interest that justifies its prior restraint. Also, the

City has not shown, and cannot show, that its ordinal prior restraint is narrowly tailored to serve

whatever interest allegedly supports it.

80.     Adams seeks a declaratory judgment that, when read together, the ordinances cited in this

Count violate the First Amendment *on their face* as a prior restraint and therefore are invalid as a

matter of law.

81.     Adams also seeks an award of attorneys' fees and costs as allowed by 42 U.S.C. § 1988,

28 U.S.C. § 1920, and such other relief as allowed by law and within this Court's jurisdiction to

provide.

**Count 4**

**(facial invalidity of ordinances as prior restraint of commercial speech arising from standardless discretion vested in zoning administrator)**

82.     Adams incorporates here all prior paragraphs of this Complaint.

83.     Through the ordinal provisions described in the prior counts of this Complaint, the City has vested its zoning administrator with unfettered discretion to deny a permit for a proposed sign based on the administrator's surmise about the future content of future messages that would appear on the proposed sign. That is:  The Zoning Ordinance vests the zoning administrator with the authority to deny a permit if the administrator assumes or speculates that a proposed sign's future messages will "advertise or direct the attention of the general public to an establishment, business, product, or service that is located on a separate site" from the proposed sign. (See Exhibit 5 - billboard" defined.) This count assumes that such future messages typically would qualify as commercial expression under First Amendment doctrine.

84.     The First Amendment protects commercial expression that is not false or misleading, does not unduly coerce consumers, and does not advocate engaging in unlawful transactions.

85.     The ordinances do not confine the administrator's discretion to determining whether the anticipated commercial expression will be false or misleading, does not unduly coerce consumers, or will advocate unlawful transactions, nor do they require the administrator to assess such criteria when evaluating an application for a permit to erect a sign.

86.     Because the ordinances allow the zoning administrator to block a proposed sign based on the administrator's standardless discretion to surmise what topic future commercial messages will address—without regard to whether those messages will be false, misleading, or advocate unlawful transactions—the ordinances impose a prior restraint of commercial expression in violation of the First Amendment.

87.     Adams seeks a declaratory judgment that, when read together, the ordinal provisions described in this Count violate the First Amendment *on their face* as an unjustified prior restraint of commercial expression, and therefore are invalid as a matter of law.

88.     Adams also seeks an award of attorneys' fees and costs as allowed by 42 U.S.C. § 1988, 28 U.S.C. § 1920, and such other relief as allowed by law and within this Court's jurisdiction to provide.

**Count 5**
**(ordinances barring electronic displays on proposed signs**
**violates First Amendment—facial and as-applied challenge)**

89.     Adams incorporates here all prior paragraphs of this Complaint.

90.     Adams applied to the City for a permit to erect a new sign with an electronic display on its parcel at 1195 Bells Rd. (Exhibit 3.)

91.     Section 212(m) of the City's Zoning Ordinance prohibits erecting signs with electronic displays. (Exhibit 14.)

92.     The City denied Adams' applications for a permit to erect the proposed sign because it proposed electronic displays on a sign that the zoning administrator expected or determined would be a "billboard."

93.     The Zoning Ordinance, however, allows electronic displays on outdoor signs if they display specified messages defined by their content:  time and temperature (excluded from definition of "electronic displays" in section 210.2, Exhibit 15) and fuel prices at service stations (sections 212(m) and 217, Exhibits 14 and 16).

94.     The Zoning Ordinance also allows electronic displays in areas zoned as major entertainment venues based on city council's ad hoc approval (sections 212(m) and 218, Exhibits 14 and 17). The ordinances do not bar city council from approving electronic displays in those areas if the signs will include messages directing the public's attention to an "establishment, business, product, or service that is located on a separate site" from the electronic display. The

City expects, for example, that electronic displays being installed at a new Sports Center will advertise upcoming events at the nearby Convention Center, which is on separate parcels of land.

95.     The City's ordinances on their face make electronic displays lawful or unlawful based on the content of the displayed message. For example, displaying the time and temperature is allowed via electronic display, but displaying the face of a Garmin sports watch showing the time and temperature via electronic display is not.

96.     The ordinances also discriminate on their face based on the identity of the speaker. Example:  A service station may display its fuel prices via electronic display, but Adams could not display the same service station's fuel prices via electronic display on the proposed sign for 1195 Bells Rd.

97.     Read together with the ordinal provisions that bar new signs that advertise something available *offsite*, the City's ordinances vest the zoning administrator with unfettered discretion to arbitrarily decide whether to allow certain digital signs. For example:  If a bank applied to put up a new sign on its site that would display time and temperature electronically, is that a new "billboard"? If the sign proposed for 1195 Bells Rd. would display the time and temperature electronically, is that a new "billboard"?

98.     The City has not identified, and cannot identify, a sufficiently important governmental interest that justified the content-based and viewpoint-based grounds upon which the City denied Adams' application for a permit to erect a new sign with electronic displays at 1195 Bells Rd. The City also has not shown, and cannot show, that its content-based and viewpoint-based

grounds for denying the application is narrowly tailored to serve whatever interest underlies the zoning administrator's decision to deny the application.

99.     For the reasons summarized in this Count, Adams seeks a declaratory judgment that the City ordinances cited here violate the First Amendment *on their face*, and *as applied* to Adams' application for a permit to erect a new sign with electronic displays at 1195 Bells Rd.

100.    Adams also seeks an award of attorneys' fees and costs as allowed by 42 U.S.C. § 1988 and such other relief as allowed by law and within this Court's jurisdiction to provide.

/s/ Duncan G. Byers
Duncan G. Byers Va. Bar No. 48146
Andrew J. Dean, Esq. Va. Bar No. 88192
PATTEN WORNOM HATTEN & DIAMONSTEIN
12350 Jefferson Avenue, Suite 300
Newport News, VA  23602
Tel:  757.223.4474
Fax: 757.249.1627
Email: dbyers@pwhd.com
         adean@pwhd.com
         joxley@pwhd.com
*Counsel for Plaintiff ADAMS OUTDOOR*
*ADVERTISING LIMITED PARTNERSHIP*